1    **WO**

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

9    Bevin Alison LyBarger,                    No. CV-23-00422-TUC-RCC (BGM)

10                   Plaintiff,               **REPORT AND RECOMMENDATION**

11   v.

12   Commissioner of Social Security
     Administration,

13                   Defendant.

     Pursuant to 42 U.S.C. § 405(g), Plaintiff Bevin Alison LyBarger seeks judicial review of a final decision by the Commissioner of Social Security.  (Doc. 1.)  This matter was referred to Magistrate Judge Bruce G. Macdonald for a report and recommendation and has been fully briefed.  (Docs. 18, 28, 30, 34.)  Based on the administrative record (AR) and the parties' briefings, the Magistrate Judge recommends that the District Court, upon its independent review, deny Plaintiff's appeal and close this case.

**PROCEDURAL HISTORY[1]**

     On July 27, 2016, Bevin LyBarger filed an application for disability insurance benefits under Title II of the Social Security Act (SSA).  (AR 155.)  Plaintiff alleged she had been disabled and unable to work since March 2, 2015, due to borderline personality

---

[1] In January 2020, Plaintiff filed a supplemental security income (SSI) application under Title XVI of the SSA. (*See* AR 2898.) The claim was denied by ALJ Baum and the Appeals Council. (*Id.*) ALJ Havens denied Plaintiff's request to reopen that application and consider it together with her disability insurance benefits (DIB) claim. (AR 2161-62, 2191-92.) As such, Plaintiff's SSI claim is not before this Court. 20 C.F.R. § 416.1481.

disorder and post-traumatic stress disorder (PTSD).  (AR 155-61.)  Prior to March 2015, Plaintiff worked at a Wal-Mart, as a truck driver, a cable installer, and a subscription cab driver.  (AR 245-46.)  Plaintiff's disability application was denied upon initial review, (AR 60-71), and upon reconsideration, (AR 73-88.  After denial of her reconsideration request, Plaintiff requested a hearing by an administrative law judge (ALJ).  (AR 101-02.)

**First Administrative Hearing**

On July 5, 2018, Plaintiff's first administrative hearing was held.  (AR 32-59.)  ALJ Baum found Plaintiff had the severe impairments of PTSD, gastrointestinal disorder, insomnia, and obesity coupled with lumbar spondylosis.  (AR 15.)  The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform medium work.  (AR 18.)  He also determined that Plaintiff could perform work that existed in significant numbers in the national economy.  (AR 24.)  The ALJ concluded that Plaintiff was not disabled under the SSA.  (AR 25.)  The Appeals Council denied Plaintiff's request for review.  (AR 1.)

**District Court Remand**

On March 29, 2021, United States Magistrate Judge Lynnette C. Kimmins remanded Plaintiff's case back to the Commissioner for a new hearing because no medical source familiar with Plaintiff's mental health records offered a functional limitations opinion.  (AR 2279-80.)  On remand, the Commissioner was instructed to obtain a functional limitations opinion concerning Plaintiff's mental health and review additional medical records regarding her insomnia and memory impairment.  (AR 2280.)

**Second Administrative Hearing**

On November 15, 2021, ALJ Baum conducted a second administrative hearing.  (AR 2218-49.)  After the ALJ again denied Plaintiff's claim, (AR 2307-2320), the Appeals Council remanded the case for further proceedings with a new ALJ.  (AR 2331-33.)

**Third Administrative Hearing**

On September 15, 2022, Plaintiff's third administrative hearing was held.  (AR 2188-2217.)  ALJ Havens found that Plaintiff had the severe impairments of degenerative disc disease, gastrointestinal disorder, insomnia, obesity, bipolar disorder, personality

disorder, anxiety, and PTSD. (AR 2164.) The ALJ determined that Plaintiff had the RFC to perform medium work with limitations. (AR 2167.) The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 2176.) The ALJ concluded that Plaintiff was not disabled under the SSA. (AR 2177.) The Appeals Council denied Plaintiff's request for review. (AR 2151-54.)

**Second District Court Complaint**

On September 5, 2023, Plaintiff filed the complaint at hand asserting that the Commissioner failed to support its decision by substantial evidence and that its decision was based on legal error. (Doc. 1 at 3.) On November 3, 2023, the Commissioner filed the administrative record. (Docs. 15-17.) On May 28, 2024, this case was reassigned to Magistrate Judge Bruce G. Macdonald. (Doc. 18.) On August 21, 2024, a certified copy of the administrative record was delivered to Plaintiff's mailing address because Plaintiff asserted that she had not received any previous answer or a copy of the administrative record from the Commissioner. (Docs. 20, 23, 26, 27.) On September 30, 2024, Plaintiff filed her opening brief. (Doc. 28.) On October 31, 2024, the Commissioner filed its answering brief, (Doc. 30); and on December 30, 2024, Plaintiff filed her reply, (Doc. 34). This Report and Recommendation follows.

## BACKGROUND

Born on June 12, 1973, Plaintiff was forty-three years old when she filed for disability benefits. (AR 155.) She earned her general equivalency diploma and obtained two associate degrees in addition to receiving her commercial driver's license (CDL). (AR 182, 320.) Plaintiff worked a number of jobs from 2008 through February 2015, including truck driver, cable installer, college tutor, and cab driver. (AR 182.) Plaintiff testified that on March 2, 2015, she had an insomnia-related breakdown and was unable to concentrate on her work. (AR 2193-94.) Plaintiff pulled over to the side of the road, called her boss, and quit her job. (AR 2194.) She has not sought employment since. (AR 2194.) From March 2015 through June 2017, Plaintiff lived at home with her mother.[2] (AR 2198-99.)

---

[2] To obtain disability benefits, a claimant must demonstrate that she was disabled prior to

**CLAIM EVALUATION**

An administrative law judge employs a five-step process to evaluate disability claims. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). The burden of proof is on the claimant at steps one through four. *Id.* To demonstrate a disability, the claimant must show that: (i) she is not working; (ii) she has a severe mental or physical impairment; (iii) the impairment meets or equals the requirements of a listed impairment under the SSA, and; (iv) she has an RFC that precludes her from performing her past work. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Ford*, 950 F.3d at 1148-49. At step five, the burden shifts to the ALJ to show that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). This five-step determination is based upon the claimant's RFC, age, work experience, and education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). If the ALJ conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

**ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements for disability benefits through June 30, 2017. (AR 2164.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of March 2, 2015. (*Id.*) At step two, the ALJ found Plaintiff to have the severe impairments of degenerative disc disease, insomnia, gastrointestinal disorder, obesity, bipolar disorder, personality disorder, anxiety, and PTSD. (*Id.*) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination with other impairments, were disabling. (AR 2165.) The ALJ next determined that Plaintiff had the RFC to perform medium work with certain limitations. (AR 2167.) In assessing Plaintiff's RFC, the ALJ found that her

---

her last insured date. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). Plaintiff's last insured date was June 30, 2017. (AR 2164.) Any deterioration in the condition after the period of eligibility is immaterial. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). As such, the ALJ asked Plaintiff questions limited to her period of eligibility, which was the time between her alleged disability onset date of March 2, 2015, and her last insured date of June 30, 2017. (*See, e.g.*, AR 2198.)

1   symptom statements were partially inconsistent with the relevant evidence of record.  (AR

2   2173-74.)  At step four, the ALJ determined that Plaintiff was unable to perform any past

3   relevant work.  (AR 2175)  Proceeding to step five, the ALJ found that Plaintiff could have

4   performed jobs that existed in significant numbers in the national economy, including linen

5   room attendant, laundry worker, or hospital cleaner, (AR 2176-77).  The ALJ concluded

6   that Plaintiff was not disabled at any time from her alleged disability onset date of

7   March 2, 2015, through June 30, 2017, the date of last insured.  (*Id*.)

8                                     **LEGAL STANDARD**

9           Federal court review of social security determinations is limited.  *Treichler v.*

10  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  A district court may

11  "set aside the Commissioner's denial of disability insurance benefits when the ALJ's

12  findings are based on legal error or are not supported by substantial evidence in the record

13  as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence

14  is more than a mere scintilla but less than a preponderance—it is such relevant evidence

15  that a reasonable mind might accept as adequate to support the conclusion."  *Orteza v.*

16  *Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  If the evidence can support either party, the

17  court may not substitute its judgment for that of the ALJ.  *Matney ex rel. Matney v. Sullivan*,

18  981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ is responsible for resolving conflicts in the

19  testimony, determining credibility, and for resolving ambiguities in the record.  *Andrews*

20  *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

21                                        **DISCUSSION**

22          As a preliminary matter, the Court finds Plaintiff fails to raise issues in her opening

23  brief that she includes in a letter attached to her complaint.  (*See* Docs. 1 at 5-12; 28 at 1-

24  3.)  The letter contains Plaintiff's personal history interspersed with unsupported symptom

25  testimony and objections linked to non sequitur exhibit references.  (*See* Doc. 1 at 5-12.)

26  Because the Court has given Plaintiff the explicit admonishment that it will only review

27  issues which are argued specifically and distinctly in a party's opening brief, (*see* Doc. 6

28  at 2), it will not address arguments that appear elsewhere with limited exception.  *See Indep.*

*Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (ruling that the court "will not consider any claims that were not actually argued in [the] appellant's opening brief"); *Smith v. Comm'r of Soc. Sec. Admin.*, 678 F. Supp. 3d 1131, 1134 (D. Ariz. 2023) (same); *Tianna B. v. Kijakazi*, No. 4:20-CV-5125, 2022 WL 17224486, at *5 (E.D. Wash. Mar. 15, 2022) (finding issues not specifically argued in claimant's opening brief waived).

If an issue is not raised in an opening brief, the Court may only review the issue for good cause shown, manifest injustice, or prejudice to the opposing party. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992); *see also Farley v. Colvin*, 231 F. Supp. 335, 341 (N.D. Cal. 2017) (applying standard to Social Security appeal); *Shade R. v. Comm'r of Soc. Sec.*, No. C-20-1790, 2022 WL 36894, at *2 (W.D. Wash. Jan. 3, 2022) (same). The only issue here that meets any of these criteria is Plaintiff's argument that the ALJ erred by improperly discounting the opinion of Susan Guinn Lahm. (*See* Doc. 1 at 6.) The Court exercises its discretion to resolve this issue because the Commissioner had the opportunity to respond. (*See* Doc. 30 at 5-7.) The Court includes the issue in its analysis of whether the ALJ ignored or improperly discounted a treating provider's opinion.

**<u>Plaintiff's Arguments</u>**

Plaintiff asserts that the ALJ erred in four ways: (i) she ignored Plaintiff's subjective pain testimony; (ii) she ignored or improperly discounted the opinions of Plaintiff's treating providers; (iii) she failed to consider Plaintiff's severe medically determinable impairments collectively; and (iv) she determined that Plaintiff could perform jobs within the national economy that medical evidence did not support. (Docs. 1 at 6; 28 at 1-3.) Plaintiff requests that the Court overturn the Commissioner's decision and grant benefits or remand the decision for reconsideration of the evidence. (Doc. 1 at 3-4.) The Court finds that the ALJ properly discounted Plaintiff's subjective symptom testimony, considered and properly discounted the opinions of Plaintiff's treating providers, evaluated the collective severity of Plaintiff's medical impairments, and correctly determined that Plaintiff could perform certain jobs within the national economy based on the substantial evidence before her. As such, Plaintiff's complaint should be denied and her appeal dismissed.

## I.     Subjective Symptom Testimony Properly Discounted

Plaintiff asserts that the ALJ ignored her subjective symptom testimony even though her symptoms are heavily documented in her medical file.  (Doc. 28 at 2.)  When a claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged, and the record fails to contain evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the clear and convincing standard, the ALJ must identify what testimony is not credible and provide evidence that undermines those specific claims. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).  The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  If the ALJ's finding is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ determined that Plaintiff's subjective symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record[.]"  (AR 2168.)  The ALJ provided clear and convincing reasons supported by substantial evidence in making this determination.  (*See* AR 2168-73.)

### Administrative Hearing Testimony

At Plaintiff's September 15, 2022, administrative hearing, she testified that her disability began on March 2, 2015, when she had an insomnia-related breakdown and was unable to sufficiently concentrate to do her work.  (AR 2193-94.)  Plaintiff stated that she pulled over to the side of the road, called her boss, and quit her job.  (AR 2194.)  She also testified that she was getting between forty-five minutes and four hours of sleep per night. (AR 2199.)  Plaintiff asserted that her insomnia and sciatica prevented her from working at the time and that "past abusive things" were coming to the surface.  (AR 2200-01.)

Plaintiff testified that since 2016, she had a hard time finishing books, (AR 2201), and that since 2017, her concentration and memory had worsened, (AR 2202).  She also

testified that there were some improvements too. (*Id*.) She quit smoking, which gave her an additional hour or more of sleep per night, and she eliminated nearly all processed foods from her diet. (*Id*.) While Plaintiff shared that she had multiple past suicide attempts, she asserted that she had not had suicidal thoughts in a long time. (AR 2209.) Plaintiff also shared that her improved diet had kept her neuropathy pain down. (AR 2203.)

When it came to discussion of Plaintiff's work-related abilities, she became more assertive of her alleged impairments. (AR 2210-11, 2216.) She said that if she were to return to work, she wouldn't know what she was doing half the time because she is easily forgetful. (AR 2210.) She testified that she could be walking across the living room at home intent on going to the bathroom and forget where she was going. (*Id*.) She asserted that she was suffering from a gradual decline in her faculties and that if she could go back to truck driving she would. (AR 2211.) Plaintiff added that there was no way that she could stand or sit for six to eight hours a day with her neuropathy because of the shooting pains that come on in an instance. (AR 2216.) She testified that the pain can be so severe that she needs to lay in bed for up to two hours before it subsides. (*Id*.) Plaintiff stated she refuses to take pain medication like Gabapentin because of its negative side effects. (*Id*.)

### A.     Symptom Evaluation Supported by Substantial Evidence

The ALJ discounted Plaintiff's subjective symptom testimony and self-reported limitations based on objective medical evidence and Plaintiff's own daily activities, which were inconsistent with her testimony and limitations. The United States Court of Appeals for the Ninth Circuit has supported both methods for properly discounting subjective symptom testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (ruling that an ALJ may discount a claimant's subjective symptom testimony by considering "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). The Court reviews the ALJ's decision as to the symptoms that Plaintiff alleges preclude her ability to work.

1
### 1. Insomnia

While Plaintiff complained that an insomnia-related breakdown forced her to quit her job and that she was only sleeping between 45 minutes and 4 hours per night, the ALJ highlighted medical evidence that told a different story. (AR 2168-70.) In October 2016, Plaintiff informed examining provider, psychologist Beverly Yoches, that she ended her job because she "had a lot of problems with management," that she slept 4 to 5 hours per night, that she did not awaken during the night, and that she felt rested in the morning. (AR 320; 2168.) In May 2016, Plaintiff told Dr. Paramveer Bhugra, that while she suffered episodes of apnea, she went to sleep at 9:00 p.m. (AR 2049; 2169.) During a May 2017 appointment with Nurse Practitioner (NP) Bernadine Miu, while reporting insomnia that worsened with stress, Plaintiff denied awakening with choking or awakening with shortness of breath, cataplexy, changes in appetite, decreased libido, gasping during sleep, headache upon awakening, heartburn, increased fatigue, irritability, malocclusion, nasal congestion, personality changes, sleepwalking, weight gain, wheezing or witnessed apnea or irregular nighttime breathing. (AR 1411; 2170.) Plaintiff confirmed night terrors with the same provider but stated that she would rather stay awake than have the terrors. (AR 1415; 2170.) The ALJ noted that while multiple providers encouraged Plaintiff to undergo a sleep study, there was no confirmed diagnosis of sleep apnea is Plaintiff's medical file, nor was there medical evidence that she had ever undergone a sleep study. (AR 2169-70.) The ALJ observed that Plaintiff failed to report complaints about insomnia, night terrors, or daytime fatigue to her therapist once she was on a medication regimen. (AR 2170.) The ALJ limited Plaintiff's exposure to heights, moving machinery, and driving a car due to possible daytime fatigue related to poor sleep. (*Id*.) The ALJ found that the evidence did not support that Plaintiff would miss work or be off task such that an insomnia-related limitation should be included in her residual functional capacity determination. (*Id*.)

### 2. Post-Traumatic Stress Disorder

Plaintiff testified that she stopped working due to several conditions coming to a head including PTSD symptoms. (AR 2200-01.) The ALJ observed that treatment notes

from Desert Senita Community Health Center reflected that Plaintiff was negative for depression, feeling down, hopelessness, and little interest or pleasure in doing things.  (AR 956; 2170.)  The ALJ added that there did not appear to be treatment for depression, PTSD, or any other psychiatric complaints until March 2016 when Plaintiff reported depression with anxiety.  (AR 1083; 2170.)  The ALJ observed that this was consistent with Plaintiff's reports to the consultative examiner that she had only intermittent psychiatric treatment.  (AR 320; 2170.)  At Plaintiff's March 2016 appointment with Dr. Walter Cayce, she was positive for difficulty with concentration and excessive worry but negative for anxiety, depression, feeling down, depressed, or hopeless, impaired judgment, personality changes, or racing thoughts.  (AR 1080; 2170.)  No particular treatment was prescribed other than Diazepam for sleep.  (AR 1082; 2170.)  At a July 2016 consultation reviewed by Licensed Professional Counselor (LPC) Susan Guinn Lahm, Plaintiff described a good day as getting everything done and doing things such as cooking or playing games, and a bad day as having a lot to do and feeling overwhelmed.  (AR 1033; 2170.)  At an August 2016 follow-up appointment, Plaintiff indicated that she was "looking for a diagnosis to apply for disability."[3]  (AR 1194; 2171.)  In addition to this evidence, the ALJ provided two pages of additional reasons for discounting Plaintiff's PTSD testimony.  (*See* AR 2170-72.)

### 3.    Lower Back Pain

Plaintiff finally testified that her sciatica issues contributed to her not being able to work including her inability to stand or sit for six to eight hours a day.  (AR 2200, 2216.)  The ALJ confirmed that imaging showed spondylosis in the claimant's lumbar spine and that she was referred to an orthopedic surgeon for L5 lumbar radiculopathy complaints, but the ALJ was unable to locate any orthopedic examination.  (AR 976; 2169.)  The ALJ noted that Plaintiff's physical examinations occasionally revealed lumbar tenderness, mild to moderate pain with range of motion, and pain with straight leg raises, (*see e.g.*, AR 285, 971, 985, 1230, 2029, 2062), and that on one occasion, she was noted to have an antalgic

---

[3] This statement may be interpreted as direct evidence of malingering. *See Widman v. Astrue*, 302 F. App'x 744, 747 (9th Cir. 2008).

gate, (*see* AR 2029).  The ALJ contrasted these findings with other medical evidence where Plaintiff was observed to have intact muscle strength and tone, normal reflexes, normal sensation, a full range of motion, and a normal gait.  (*See* AR 285-86, 342, 348-419, 920, 930, 1000, 1248, 1749, 1809, 2008-09, 2063.)  The ALJ also noted that Plaintiff reported that she was able to walk three-and-a-half miles per day for exercise and that she had not received any steroid injections or surgical procedures.  (*See* AR 2060; 2169.)

These clear and convincing reasons, and others in the ALJ's decision, (*see* AR 2173-75), demonstrate that the ALJ consistently discounted Plaintiff's subjective symptom testimony with substantial evidence.  Plaintiff's contrary argument is denied.

## II.    Provider Opinions Considered and Properly Discounted

Plaintiff next asserts that the ALJ "ignored completely" Physician Assistant (PA) Nicola Lawrence's clinical assessments and improperly dismissed the opinion of LPC Guinn Lahm when making her disability determination.  (Docs. 1 at 6; 28 at 2.)  Because Plaintiff filed her disability application before March 27, 2017, the prior Social Security medical opinion regulations apply.  *E.M. v. Kijakazi*, 591 F. Supp. 3d 595, 625 (N.D. Cal. 2022).  To reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (superseded on other grounds).  However, only licensed physicians and certain other qualified specialists are considered "acceptable medical sources."  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (cleaned up).  Physician assistants, nurse practitioners, and therapists are considered "other sources."  *Id.* (citing 20 C.F.R. § 404.1513(d)); *Molina*, 674 F.3d at 1111.  While the opinions of "other sources" must still be considered, the ALJ may discount the opinions by giving "reasons germane to each witness for doing so."  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted).  Those reasons include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor."  *Id.*  An ALJ may also discount the statement of an "other source" because the opinion addresses the

ultimate issue of disability, which is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1).

Plaintiff's assertion that Dr. Lawrence's clinical assessments were ignored is misleading and inaccurate.  Plaintiff mistakes her own symptom testimony for a treating provider's clinical assessment in a February 8, 2018 progress note summarizing Plaintiff's medication management session with Dr. Lawrence.  (*See* AR 784.)  The ALJ was not required to perform a line-by-line analysis of Plaintiff's own testimony simply because it appears in one of her medical records.  *Garcia v. Comm'r of Soc. Sec.*, 732 F. Supp. 3d 1199, 1217 (E.D. Cal. 2024) (ruling that an ALJ is not required to perform a line-by-line analysis of the claimant's testimony, as long as the ALJ's rationale is clear enough to be understood and is supported by substantial evidence); *see also Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (cleaned up) ("[A]n ALJ need not discuss *all* evidence presented to her[;] [r]ather, an ALJ must explain why significant probative evidence has been rejected.")  While Plaintiff's testimony appears in a progress note under the incorrect heading "Prescriber's Evaluation," (AR 784), the ALJ considered similar testimony in her RFC determination and in her overall disability finding.  (*See* AR 2168-73.)  Additionally, review of Plaintiff's medical record reflects that provider progress notes from Desert Senita Community Health Center are contained in six (6) exhibits that cover 453 pages.  (AR 428-881.)  The ALJ considered and referenced these exhibits nineteen times in her disability determination.  (*See* AR 2166-75.)  As such, the ALJ did not ignore clinical assessments from Plaintiff's treating providers, and Plaintiff's argument to the contrary is denied.

The ALJ also properly discounted statements from Plaintiff's therapist, LPC Guinn Lahm, for germane reasons.  Counselor Guinn Lahm drafted a disability letter concluding that Plaintiff was unable to work due to her PTSD, insomnia, and chronic fatigue diagnoses. (AR 317.)  The ALJ gave little weight to the letter because (i) it was unclear whether Guinn Lahm personally evaluated Plaintiff that day; (ii) her statement was made a year after Plaintiff's alleged disability onset date; (iii) her conclusion that Plaintiff was unable to work was an opinion on the ultimate issue reserved to the Commissioner; (iv) Plaintiff's

treatment notes routinely reflected normal behavior and moods, normal memory, average to above average intelligence, normal judgment and insight, normal thought processes and thought content, and normal concentration; and (v) Guinn Lahm's own treatment notes showed that Plaintiff had improved functioning and reduced symptoms with medication management and counseling.  (*See* AR 2175 (citing over twenty (20) separate supporting medical records).)   Accordingly, Plaintiff's argument that the ALJ erred by improperly discounting LPC Guinn Lahm's medical opinion is denied.

**III.     Combined Effect of Severe Impairments Considered**

Plaintiff next argues that the ALJ failed to consider the entirety of her severe medical impairments in arriving at her disability determination.  (*See* Doc. 28 at 2 ("Throughout the records and evidence … there [are] several examples of my disabilities and how severe they are and that the entirety of them has not been collectively considered[.]").)   At step two of the disability inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  *Smolen*, 80 F.3d at 1289-90.  Important to the step two inquiry is the requirement that the ALJ consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.  *Id*. at 1290.  An impairment is severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities."  *Taylor v. Astrue*, 661 F. Supp. 2d 1184, 1191 (E.D. Wash. 2009) (citing 20 C.F.R. §§ 404.1520(c) and 4160920(c)).   Basic work activities include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting."  *Jimenez v. Astrue*, 641 F. Supp. 2d 954, 960 (C.D. Cal. 2009).

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, insomnia, gastrointestinal disorder, obesity, bipolar disorder, personality disorder, anxiety, and PTSD.  (AR 2164.)   The ALJ evaluated Plaintiff's severe impairments

individually and in combination with her mental impairments and concluded that they did not meet or medically equal one of the listed disabilities in the Social Security guidelines. (AR 2165-67.)  Moreover, it is Plaintiff who carries the burden of establishing that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").  Here, there was no uncontradicted, credible medical evidence before the ALJ that Plaintiff suffered from a combination of severe impairments that rendered her disabled under the SSA.  Even on appeal, Plaintiff fails to highlight consistent, objective medical evidence that demonstrates that she suffers from a combination of severe impairments that render her unable to work.  (*See* Doc. 28 at 1-3.)  As such, the ALJ did not commit reversible error by failing to consider the combined effect of Plaintiff's severe impairments, and Plaintiff's assertion to the contrary is denied.

## IV.    RFC Determination Supported by Substantial Evidence

Plaintiff's final assertion is that the ALJ's RFC determination is not supported by the evidence in her medical record.  (*See* Doc. 28 at 3 ("[T]hey said I could fold sheets at a hotel, I cannot[.] I cannot hold my arms above my heart without having difficulty breathing, the asthma that is mentioned multiple [times] throughout my medical records prevents this.").)  Plaintiff fails to support her assertion that she cannot raise her arms above her heart without difficulty breathing with any medical evidence or other evidence in the record.  (*See id*.)  She also failed to raise this issue in front of the ALJ even though she was represented by counsel.  (*See* AR 2216); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) (reiterating that appellants must raise issues at their administrative hearings to preserve them on appeal).  In making her medium work RFC determination, the ALJ partially relied on a reviewing provider's evaluation that found that Plaintiff could lift and carry up to fifty pounds, could sit, stand, and walk for up to six hours in a normal eight-hour workday, and that she had a number of postural and environmental

limitations to consider, including avoiding concentrated exposure to hazards.  (*See* AR 84-86; 2174.)  The ALJ also noted that myriad treatment notes often belied Plaintiff's claims of significant impairments.  (AR 2175.)  The Court fails to find any reversible error in the ALJ's RFC determination and denies Plaintiff's argument on the matter.

## RECOMMENDATION

The Magistrate Judge recommends that the District Court, upon its independent review, deny Plaintiff's complaint, (Doc. 1), and affirm the Commissioner's final decision. Under the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  Due to the significant delay in prosecuting this case, and under the Court's discretion, the responding party shall have seven (7) days after being served with a copy of the opposing party's written objections to file a response.  No replies shall be filed unless leave is granted by the District Court.  If objections are filed, the parties shall use the following case number: **23-cv-422-RCC**.  Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 10th day of February, 2025.

Honorable Bruce G. Macdonald
United States Magistrate Judge